IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CRAIG R. LANE,

    Plaintiff,

v.

ALEX AZAR, et al.,

    Defendants.

Civil Action No.: GLR-19-03183

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff Craig R. Lane's Motion for Temporary Restraining Order and Preliminary Injunctive Relief (ECF No. 2) and Defendants Alex Azar, II and Joanne Chiedi's Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 16).[1] The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons set forth below, the Court will grant the Motion to Dismiss and deny the Motion for Injunctive Relief.

## I.   BACKGROUND

Lane is a podiatrist who owns the Sandtown Foot and Ankle Center in Baltimore, Maryland. (Compl. ¶¶ 5, 13, ECF No. 1). He financed his education from the New York College of Podiatric Medicine with several government-subsidized Health Education Assistance Loans (collectively, the "Loan"). (Id. ¶ 12; Thompson Decl. ¶ 7, ECF No. 16-7). After opening his practice in 1995, Lane failed to make payments on the Loan. (Compl.

---

[1] Also pending before the Court is Defendants' Motion for Extension of Time (ECF No. 14), which the Court will grant nunc pro tunc, and Lane's Motion for Case Assignment to Magistrate (ECF No. 22), which the Court will deny.

¶¶ 13, 16). In 1997, the Circuit Court for Baltimore City, Maryland entered a judgment against Lane for nonpayment. (Mot. Dismiss Ex. 3 ["Balt. Cir. Ct. Records"] at 6, ECF No. 16-5).[2]

On October 15, 1998, the Department of Health and Human Services ("HHS") sent Lane a "final notice," requesting that Lane respond to the notice with a proposed repayment plan. (Compl. ¶ 16; Mot. Dismiss Attach. ["Admin. Record"] at 7, ECF No. 16-2).[3] HHS informed Lane that failure to negotiate a repayment agreement within sixty days would result in referral of his case to the Office of the Inspector General ("OIG") for imposition of an exclusion from Medicare, Medicaid, and all other federal health care programs. (Admin. Record at 7). Lane did not respond to the notice or request a hearing regarding the exclusion. (Compl. ¶ 16; Thompson Decl. ¶ 11).

On June 30, 1999, OIG notified Lane by letter that he would be excluded from participation in all federal health care programs, pursuant to 42 U.S.C. § 1320a-7(b)(14), due to his failure to pay the Loan or establish a repayment agreement. (Admin. Record at 7). The letter informed Lane that he could challenge the exclusion by requesting an administrative law judge ("ALJ") hearing within sixty days from the date he received the

---

[2] Citations to the Baltimore Circuit Court Records refer to the pagination assigned by the Court's Case Management and Electronic Case Files ("CM/ECF") system.

[3] Documents from HHS' administrative record are attached to Lane's Complaint as separate exhibits. HHS attached those same documents to its Motion as one exhibit. For convenience, the Court will cite to HHS' exhibit. Citations to the administrative record refer to the pagination assigned by the Court's CM/ECF system.

letter. (Id.). Finally, the letter directed Lane to contact the United States Attorney's Office in Baltimore, Maryland if he wished to negotiate a repayment agreement. (Id.).

In August 1999, Lane executed a settlement agreement (the "Agreement") with the United States Attorney's Office in which he agreed to make monthly payments toward the Loan, to promptly withdraw any appeal pending before an ALJ, and to waive all other procedural rights, including his right to an appeal hearing.[4] (Id. at 7–8). In exchange, Lane's principal Loan balance and interest rate were reduced; the exclusion would be stayed, effective September 3, 1999, so long as Lane complied with the terms of the Agreement; and Lane would be eligible for full reinstatement once the Loan was paid. (Id.). However, if Lane defaulted, he agreed to waive "all procedural rights including but not limited to notice, hearing, appeal and administrative and judicial review, with respect to the immediate reinstatement of the exclusion under 42 U.S.C. §§ 1320a-7(b)(14) and 1395[cc](a)(3)." (Id. at 8).

Lane contends that he "faithfully" complied with the Agreement, despite "several payment-hiccups," until August 2017 when he experienced "life-threatening health issues." (Compl. ¶¶ 18–19). Because of Lane's medical condition, his Loan payment was temporarily deferred until 2018. (Id. ¶ 20). When Lane failed to resume making payments

---

[4] Lane contends that he signed the Agreement "under duress," and that he lacked the "financial wherewithal to secure the services of an attorney to advise him" because he experienced a divorce, home foreclosure, and the death of a patient earlier that year. (Compl. ¶ 17).

in January 2018, his debt was referred to OIG for exclusion.[5] (Id. ¶¶ 20–21; Compl. Ex. E ["Thompson Correspondence"] at 1–2, ECF No. 1-5).

On October 31, 2018, OIG sent Lane a letter informing him that he had defaulted on the terms of the Agreement, that the stay on his exclusion was being lifted, and that his exclusion would remain in effect until he paid the outstanding balance and all accrued interest.[6] (Admin. Record at 9, 158–60). Once the stay was lifted, the Office of Personnel Management disqualified Lane from participating in the Federal Health Benefits Program, Mercy Hospital terminated its business relationship with Lane, and several insurance companies removed Lane from their Medicare Advantage and commercial network of providers. (Compl. ¶ 24).

On November 23, 2018, Lane retained counsel and submitted a "Request for Hearing & Statement of Issues in Opposition of Exclusion of Craig R. Lane" to HHS, seeking review of OIG's decision lifting the stay of his exclusion. (Admin. Record at 17–18). The ALJ issued an opinion on June 25, 2019, dismissing Lane's request as untimely. (Id. at 13–14). On August 16, 2019, Lane filed a notice of appeal with HHS' Departmental Appeal Board ("Appeal Board") that was also dismissed as untimely. (Id. at 15–16).

---

[5] Lane asserts that he failed to repay the Loan following deferment because the loan agent, Paula Thompson, sent notice of his payment resumption date to the wrong email address. (Compl. ¶¶ 20–21). However, the Court notes that Lane attached an email correspondence to his Complaint memorializing a telephone conversation he had with Thompson on or about November 20, 2017 in which she informed Lane that he was to resume making monthly payments in January 2018. (See Thompson Correspondence at 2).

[6] OIG produced several "final demand" letters dated April 3, 2009, July 19, 2011, June 15, 2016, and September 14, 2016—well before the onset of Lane's August 2017 health issues—informing Lane that he was in default under the terms of the Agreement. (See Admin. Record at 8).

On November 2, 2019, Lane filed a Complaint against Alex Azar, II in his official capacity as HHS' Secretary and Joanne Chiedi in her official capacity as HHS' Acting Inspector General (collectively, "HHS"), seeking judicial review of the ALJ and Appeal Board decisions. (ECF No. 1). The Complaint alleges: Exclusion Not Authorized By Statute (Count I); Exclusion Was Contrary to Law, Not Supported by Substantial Evidence, an Abuse of Discretion and/or Arbitrary and Capricious (Count II); Indefinite Exclusion Violates the Social Security Act and/or APA (Count III); the DAB's Interpretation of Plaintiff's Due Process Rights in Sharon Anderson Case is Unconstitutional and the ALJ Reliance on the Anderson's Case to Deny Plaintiff Request for a Hearing is Unconstitutional (Count IV); and the ALJ Erred Because ALJ Failed to Utilize the Appropriate Standard in Determining Whether Plaintiff's Waiver of His Due Process Rights Were Knowing and Voluntary (Count V). (Compl. ¶¶ 31–89).[7] Lane seeks declaratory and injunctive relief. (Id. at 20).

Lane filed a Motion for Temporary Restraining Order and Preliminary Injunctive Relief on November 3, 2019. (ECF No. 2). HHS filed an Opposition to Lane's Motion on November 27, 2019 and a Motion to Dismiss on January 7, 2020.[8] (ECF Nos. 15, 16). On January 21, 2020, Lane filed an Opposition to the Motion to Dismiss. (ECF No. 17). HHS filed a Reply on February 10, 2020. (ECF No. 21).

---

[7] Although the Complaint appears to challenge Lane's initial exclusion in 1999, Lane asserts that he only seeks review of HHS' decision to lift the stay of his exclusion. (See Pl.'s Opp'n Defs.' Mot. Dismiss Summ. J. ["Pl.'s Opp'n"] ¶ 13, ECF No. 17).

[8] To date, Lane has not filed a Reply in support of his motion for injunctive relief.

## II.   DISCUSSION

**A.   Motion to Dismiss**

**1.   Standard of Review**

HHS argues that dismissal is appropriate because Lane failed to timely exhaust his administrative remedies. "Motions to dismiss for failure to exhaust administrative remedies are governed by Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction." Khoury v. Meserve, 268 F.Supp.2d 600, 606 (D.Md. 2003), aff'd, 85 F.App'x 960 (4th Cir. 2004). A defendant challenging a complaint under Rule 12(b)(1) may advance a "facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" Hasley v. Ward Mfg., LLC, No. RDB-13-1607, 2014 WL 3368050, at *1 (D.Md. July 8, 2014) (alteration in original) (quoting Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009)).

When a defendant raises a facial challenge, the Court affords the plaintiff "the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Kerns, 585 F.3d at 192 (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). As such, the Court takes the facts alleged in the complaint as true and denies the motion if the complaint alleges sufficient facts to invoke subject matter jurisdiction.

With a factual challenge, the plaintiff bears the burden of proving the facts supporting subject matter jurisdiction by a preponderance of the evidence. U.S. ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009). In determining whether the plaintiff has met this burden, the Court "is to regard the pleadings' allegations as mere evidence on

the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (citing Adams, 697 F.2d at 1219). Nevertheless, the Court applies "the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id. (citing Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1559 (9th Cir. 1987)). The movant "should prevail only if the material jurisdictional facts are not in dispute and the [movant] is entitled to prevail as a matter of law." Id. (citing Trentacosta, 813 F.2d at 1558). Unlike under the summary judgment standard, however, the Court is permitted to decide disputed issues of fact, Kerns, 585 F.3d at 192, and weigh the evidence, Adams, 697 F.2d at 1219

**2.    Analysis**

HHS argues that dismissal based on procedural default does not constitute a "final decision" on the merits and, thus, is not subject to judicial review. Conversely, Lane argues that the Appeal Board's decision declining review of an ALJ's ruling constitutes a final agency decision pursuant to 42 C.F.R. § 1005.21(j), which provides that the Appeal Board's decision, "including a decision to decline review of the initial decision, becomes final and binding 60 days after the date on which the [Appeal Board] serves the parties with a copy of the decision." Lane also argues that the Appeal Board reached the substance of his claims, in addition to noting the untimeliness of his appeal. The Court agrees with HHS.

Pursuant to § 1128(b)(14) of the Social Security Act, codified at 42 U.S.C. § 1320a-7(b)(14), HHS may exclude an individual from participating in any federal health care program upon default on health education loans or scholarship obligations. Additionally, individuals who either refuse to enter into a repayment agreement or breach the provisions of such an agreement may be excluded from federal health care programs until the outstanding debt is paid. 42 U.S.C. § 1395ccc(a)(3)(B) (2018). Absent "reasonable showing to the contrary," an excluded individual is presumed to have received the notice of exclusion five days after the date of that notice. 42 C.F.R. § 1005.2(c) (2020).

Individuals subject to exclusion may seek review of their exclusion by filing a request for a hearing with HHS' Civil Remedies Division. Id. § 1005.2(a); see also id. § 1001.2007(a). The written request must be made within sixty days of receipt of the exclusion notice and may only challenge whether there is a basis for the exclusion and the reasonableness of its length. Id. §1001.2007(a)–(b); id. § 1005.2(c). The ALJ must dismiss a hearing request that is not timely filed. Id. § 1005.2(e)(1). When presented with a timely request, the ALJ will conduct a hearing on the record, examining the merits of the petitioner's claims, and issue an initial decision. Id. §§ 1005.15–20. Either party may appeal the ALJ's decision to the Appeal Board within thirty days of the date of service of the ALJ's decision. Id. § 1005.21. The Appeal Board's decision, including a decision declining review of the ALJ's decision, becomes final and binding sixty days after service on the parties. Id. § 1005.21(j).

Judicial review of the agency's final decision is governed by 42 U.S.C. § 1320a-7(f), which incorporates the standards set forth in 42 U.S.C. § 405(g) and § 405(h). Section

405(g) provides, in relevant part, that "[a]ny individual, after any final decision of the [Secretary] made after a hearing to which [the excluded individual] was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision." 42 U.S.C. § 405(g) (2018). Section 405(h) imposes the following limitations upon judicial action: "No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States . . . shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." Id. § 405(h).

The statute and implementing regulations governing exclusions do not define "final decision." However, Smith v. Berryhill, 139 S.Ct. 1765 (2019), a United States Supreme Court decision issued after the parties fully briefed the jurisdictional issue here, is instructive. There, Ricky Lee Smith was denied Social Security benefits following an ALJ hearing, and the Social Security Administration's Appeals Council—the agency's final decisionmaker—dismissed Smith's appeal as untimely. Smith, 139 S.Ct. at 1771. The issue before the Supreme Court was "whether a dismissal by the Appeals Council on timeliness grounds after a claimant has received an ALJ hearing on the merits qualifies as a 'final decision . . . made after a hearing' for purposes of allowing judicial review under § 405(g)." Id. at 1774 (quoting 42 U.S.C. § 405(g) (2018)). The Court answered that question in the affirmative. Id.

In reaching that conclusion, the Supreme Court examined the text of § 405, finding that Smith "obtained the kind of hearing that § 405(g) most naturally suggests: an ALJ

9

hearing on the merits." Id. at 1775. The Court further found that because there is a "strong presumption that Congress intends judicial review of administrative action," a petitioner who has received "a claim-ending timeliness determination from the agency's last-in-line decisionmaker after bringing his claim past the key procedural post (a hearing) mentioned in § 405(g)" has received "a 'final decision . . . made after a hearing' under § 405(g)." Id. at 1776–77 (alterations in original) (quoting Bowen v. Mich. Acad. of Family Physicians, 476 U.S. 667, 670 (1986)).

Here, Lane failed to cross that key procedural threshold—an ALJ hearing on the merits. The ALJ concluded that Lane had no right to appeal the lifting of the stay under 42 C.F.R. § 1001.2007(a)(1) and that "in the absence of a timely appeal of the exclusion in 1999, [he] ha[d] no right to a hearing." (Admin. Record at 9–10). Citing 42 C.F.R. § 1005.2(e)(1), the ALJ dismissed Lane's request as untimely. (Id. at 13–14).

The ALJ's examination of Lane's arguments concerning the conscionability, validity, and voluntariness of the Agreement does not change this Court's analysis. (See Admin. Record at 11–12). The Court notes that Lane raised these arguments for the first time in opposition to OIG's motion to dismiss his hearing request. (See Admin. Record at 11–12, 105–08). However, the ALJ's examination of Lane's arguments does not constitute a meritorious resolution of either (1) the reason for Lane's exclusion or (2) the reasonableness of its length—the only bases for requesting a hearing under 42 C.F.R. § 1001.2007. At bottom, Lane did not receive an ALJ hearing on the merits.

Furthermore, Lane received the ALJ's decision dismissing his request for a hearing on June 25, 2019, but he did not file a notice of appeal until August 16, 2019—almost one

month after the appeal deadline. Contrary to Lane's assertion, the Appeal Board did not examine the merits of his underlying claim. The Appeal Board dismissed Lane's appeal as untimely and noted that even if his appeal was timely, Lane waived his right to challenge the exclusion and its reinstatement. (See Admin. Record at 14).

Based on the foregoing, the Court concludes that it is without jurisdiction to review HHS' decision, because Lane failed to reach the "key procedural post"—a hearing on the merits as described in § 405(g)—and, as such, has not received a "final decision" subject to judicial review.[9] Smith, 139 S.Ct. at 1777; see also Califano v. Sanders, 430 U.S. 99, 108 (1977) (concluding that judicial review under § 405(g), formerly § 205(g), is limited to a "final decision of the Secretary made after a hearing") (internal quotation marks omitted).

Because the Court lacks subject matter jurisdiction over this case, it must deny Lane's Motion for injunctive relief. See Russell v. Giant, No. GLR-16-1286, 2016 WL 4364145, at *2 (D.Md. Aug. 16, 2016) (dismissing a motion for injunctive relief because the Court lacked subject matter jurisdiction).

---

[9] In so holding, this Court notes that the Smith Court envisioned circumstances, identical to Lane's, in which "a claimant [ ] assertedly faltered at an earlier step—e.g., whose request for an ALJ hearing was dismissed as untimely and [ ] then appealed that determination . . . before seeking judicial review." Smith, 139 S.Ct. at 1777 n.17. However, the Supreme Court stopped short of extending its holding to encompass this scenario. Id. Simply put, the Court declined to hold that a plaintiff, similarly situated to Lane, has obtained a final decision following an ALJ hearing when both his request for a hearing and his administrative appeal are dismissed as untimely. Id.

## III.   CONCLUSION

For the foregoing reasons, the Court will grant Defendants Alex Azar, II and Joanne Chiedi's Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 16) and deny Lane's Motion for Temporary Restraining Order and Preliminary Injunctive Relief (ECF No. 2). A separate Order follows.

Entered this 29th day of June, 2020.

_____/s/_____
George L. Russell, III
United States District Judge